NICHOLAS M. PORRAS (Nevada Bar No. 12849)
nick@porraslegal.com
LAW OFFICES OF NICHOLAS M. PORRAS, P.A.
201 West Liberty Street, Ste. 207
Reno, NV 89501
Tel: (775) 525-9246
Fax: (888) 688-4975


FRANK H. KERNEY, III, (*Pro Hac Vice forthcoming*)
fkerney@forthepeople.com
Morgan & Morgan, Tampa, P.A.
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Tel: (813) 223-5505

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**LAS VEGAS DIVISION**

BRENT VICTORIAN,

  Plaintiff,

v.                                                            CASE NO.:

CONN APPLIANCES, INC.,

  Defendant.

_____/


**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff, BRENT VICTORIAN, by and through the undersigned counsel, and sues Defendant, CONN APPLIANCES, INC., and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1.      The TCPA was enacted to prevent companies like CONN APPLIANCES, INC. from invading American citizen's privacy and to prevent abusive "robo-calls."

2.      The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling."  *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.      According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing

## JURISDICTION AND VENUE

5.      Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6.      Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin.*

*Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7.      The alleged violations described herein occurred in North Las Vegas, NV. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

8.      Plaintiff is a natural person, and citizen of the State of Nevada, residing in North Las Vegas, Nevada.

9.      Plaintiff is the "called party."  See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10.      Defendant is a corporation which was formed in Texas with its principal place of business located at 4055 Technology Forest Boulevard, Suite 210, The Woodlands, Texas 77381; which conducts business through its registered agent, C T Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

11.      Defendant "robo-called" Plaintiff hundreds of times looking for an unknown third party without Plaintiff's prior express consent.

12.      Plaintiff has no business relationship with Defendant.

13.      Some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she

3

knew it was an autodialer because of the vast number of calls she received and because she heard a pause when she answered her phone before a voice came on the line.

14.     Defendant's ATDS dials telephone numbers automatically from a list of numbers, with no human intervention involved at the time of dialing, and is an automatic telephone dialing system as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227(a)(1). *Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 U.S. App. LEXIS 26883 (9th Cir. Sept. 20, 2018).

15.     In addition, Defendant called Plaintiff in "Broadcast mode" using both an artificial voice and pre-recorded messages as defined by Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

16.     In broadcast mode, the system automatically calls customers with no human being involved at the time of dialing. If a customer answers a call made in this mode, he or she will be automatically connected to an artificial voice message through an IVR. Furthermore, in this mode Defendant has the option of leaving a pre-recorded message for the called party if it recognizes a voicemail.

17.     Defendant also used their dialer in a Predictive mode to call Plaintiff's cell phone number.

18.     In predictive mode the system automatically calls customers with no human being involved at the time of dialing. If a customer answers a call made in this mode, the system will automatically transfer that caller to an available agent who will field the call.

19.     At the time of dialing, agents fielding broadcast or predictive mode calls do not know what numbers are being dialed by the system, as the computer is randomly or sequentially dialing numbers without human intervention.

20.     Agents only ever become aware of a customer being called if that customer answers and is then automatically transferred to the agent. At that time, the customer's demographic information automatically populates on the agent's computer screen. Prior to this, agents have no idea who the system is auto-dialing.

21.     Plaintiff also received "abandoned calls" from the Defendant.

22.     Abandoned calls occur when Defendant's automated system calls more customers than it has agents available, and as a result a customer who answers hears nothing but dead air, as the Noble Systems automatic telephone dialing system is unable to transfer the call it dialed to a human being.

23.     In total, Defendant uses its ATDS to make over 721,000 outbound calls per day with approximately 21,630 abandoned phone calls per day.

24.     Plaintiff was the subscriber, regular user and carrier of the cellular telephone number (702) ***-2026, and was the called party and recipient of Defendant's calls.

25.     Defendant placed an exorbitant number of automated calls to Plaintiff's cellular telephone (702) ***-2026 in an attempt to solicit Plaintiff into purchasing merchandise from Defendant.

26.     On several occasions since Defendant's campaign of harassing automated calls began, Plaintiff instructed Defendant's agent(s) to stop calling his aforementioned cellular telephone number.

27.     On multiple occasions Plaintiff answered a call from Defendant and advised that they had the "wrong number" and to "stop calling."

28.     Unfortunately, no matter how many times Plaintiff asked for the calls to stop, Defendant continued to harass Plaintiff by bombarding him with automated calls.

29.     Defendant had no legitimate purpose in calling Plaintiff that many times, especially after Plaintiff had requested that the calls stop. Rather, Defendant displayed a pattern of behavior that can only be described as an intentional and willful attempt to harass and abuse the Plaintiff.

30.     Despite multiple clear and unequivocal requests for the calls to stop, Defendant continued to bombard Plaintiff's cellular telephone number with automated calls dialed by its automatic telephone dialing system.

31.     Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

32.     Plaintiff's numerous verbal requests for the calls to end were ignored.

33.     Defendant has a corporate policy to use its automatic telephone dialing system and pre-recorded/artificial voice calls to harass and intimidate individuals like Plaintiff.

34.     Defendant's policies and procedures are entirely toothless and are created simply for purposes of litigation. In reality, Defendant's agents and compliance teams ignore do not call requests from customers and allow those customers – and non-customers - to be harassed by non-stop automated calls.

35.     Defendant has been sued for violating the TCPA over one thousand times by consumers all across the country.

36.     On August 13, 2019, Arbitrator Platt W. Davis III, in Houston, Texas, in the matter of *St. Mary v. Conn Appliances, Inc.* granted an award for the Claimant finding that Respondent's system is an ATDS and awarding damages of $371,000.

37.     On August 7, 2019, Judge Mazzant of the Eastern District of Texas issued an order finding as follows: "Conn's provides high-interest loans to "customers that are considered higher-

risk, subprime borrowers." This means that there is "a higher risk of customer default, higher delinquency rates, and higher losses than extending credit tomore creditworthy customers." When a customer defaults, Conn's uses prerecorded voice messages to help collect debts that may be owed. Conns' "predictive dialer system…helps [it] contact . . . over 26,000 delinquent customers daily." Conn's also changes its phone numbers every day to make it impossible to block its calls." *Stevens v Conns' Inc., et al.,* 4:16-cv-00309-ALM Doc. 19, EDTX 08/07/2019.

38.     On May 15, 2019, Arbitrator Paul Flores (Dallas, TX) in *Larson v. Conn Appliances, Inc. (01-18-0002-1348)* awarded treble damages for willful and knowing violations of the TCPA for 249 calls and awarded Claimant damages totaling $373,500.00.

39.     On March 25, 2019, Arbitrator Michael Russell (Memphis, TN) in *Davis v. Conn Appliances, Inc. (AAA: 01-17-0006-8007)* found "that the system used by Respondent [Noble Dialer] was an ATDS." He went on to find that Claimant revoked her consent even when she failed to fully identify herself. He awarded $459,000 for willful and knowing violations of the TCPA for the 306 calls after Claimant revoked.   Such award was confirmed on November 18, 2019 in the Southern District of Texas, Houston (*Conns v. Davis*, H-19-1097) by District Judge Miller.

40.     On September 4, 2018, Arbitrator David J. Harris (Memphis, TN) found that "Based upon the proof presented in this case, the Arbitrator finds that the system [Noble Dialer] used by Respondent to call claimant was an ATDS". Arbitrator awarded $215,550 for the 431 calls made in violation of the TCPA after Claimant revoked consent.  Respondent was ordered to pay a sum of $215,500 in the matter of the Arbitration between *Johnnie Williams, Jr. and Conn Appliances, Inc. (AAA Case No.: 01-17-0001-5149)*

41.     On January 10, 2018, Arbitrator L. Wearen Hughes, in the matter *Summers v. Conn Appliances, Inc. (AAA: 01-16-0004-1183)* found that "the system [Noble Dialer] used by

Respondent to call Claimant was an ATDS." Arbitrator Hughes awarded a total of $311,000, including treble damages of $1,500 per willful violation of the law, for violations of the TCPA.

42.     On September 20, 2017, Arbitrator Carolyn Witherspoon (Memphis, TN), in the matter *Rogers v. Conn Appliances, Inc.* (*AAA: 01-17-0000-1802*), found that Conn's violated the TCPA, by calling the claimant using its Noble system after she revoked consent. Arbitrator Witherspoon found a willful violation and awarded treble damages totaling $4,500.

43.     Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Defendant's agents to remove the number.

44.     Defendant's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendant they do not wish to be called.

45.     Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

46.     Defendant has admitted in legal documents filed with the United States Securities and Exchange Commission that it utilizes a Noble Systems Predictive Dialer, which is a type of automatic telephone dialing system.

47.     Defendant's written corporate policies are not enforced and provided no enforcement or means for Plaintiff to have Plaintiff's number removed from Defendant's call list.

48.     Defendant's business model is designed to abuse consumers with automated calls in an effort to pressure them into making their payments.

49.     Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

50.     Not one of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

51.     Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff as to each ATDS call made to Plaintiff's cell phone over the last four years.

52.     From each and every call placed without express consent by Defendant to Plaintiff's cellular telephone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

53.     Defendant's non-stop calls drained Plaintiff's cell phone battery and occupied its ability to receive other calls.

54.     Defendant's non-stop calls wasted Plaintiff's time.

55.     Plaintiff wasted time answering calls (including abandoned calls from Defendant), looking at missed calls, and listening to pre-recorded messages from Defendant. His daily life and routine were disrupted by the continuous calls from Defendant. Plaintiff suffered the injuries of invasion of privacy and the intrusion upon his right of seclusion.

56.     Plaintiff was also affected in a personal and individualized way by frustration, confusion, and anger.

## COUNT I

### (Violation of the TCPA)

57.     Plaintiff fully incorporates and re-alleges paragraphs one (1) through fifty-six (56) as if fully set forth herein.

58.     Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff wished for the calls to stop

3

59.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against CONN APPLIANCES, INC. for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Nicholas M Porras*
Nicholas M. Porras, Esquire.
Nevada Bar #: XXX
The Law Offices of Nicholas M. Porras, P.A.
201 West Liberty St. Ste. 207
Reno NV 89501
Tele: (775) 525-9246
Fax: (888) 688-4975
nick@porraslegal.com
Attorneys for Plaintiff

3